IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ZUANIA MIRO MARTINEZ<br><br>Plaintiff,<br><br>v.<br><br>BLANCO VELEZ STORE, INC., CARLOS GENZANA AND HECTOR CABRERA<br><br>Defendants. | CIVIL NO. 04-2260(HL)<br><br>RE: SEXUAL HARASSMENT<br><br>Plaintiff demands trial by jury |

## COMPLAINT

**TO THE HONORABLE COURT:**

**COMES NOW,** THE Plaintiff, Zuania Miro Martinez through the undersigned attorney, and very respectfully states, alleges and prays:

### I. JURISDICTION

This Honorable Court has jurisdiction over this civil action pursuant to 28 U.S.C. §1343 this being a civil action which arises under 42 U.S.C. §§2000(e) et seq.; 42 U.S.C. §1981. This Honorable Court also has supplemental jurisdiction over this civil action pursuant to 28 U.S.C. §1367 over the state law claims under sections 146 et seq., 155 et seq., and 1321 et seq., of title 29 of the Laws of Puerto Rico Annotated (L.P.R.A.); sections 5141 and 5142 of title 31 of L.P.R.A, as

well as sections 3118 through 3132 of title 32 of L.P.R.A and Act. No. 115 of December 20, 1991 (Act No. 115) 29 L.P.R.A. sec. 194 *et seq*.

## II
## PARTIES

1. Plaintiff, Zuania Miro Martinez (Miro), at all relevant times herein was and presently is a resident and domiciliary of the Commonwealth of Puerto Rico and was an employee of Blanco Velez Store, Inc.

2. Defendant, Blanco Velez Store, Inc. (Blanco), at all relevant times herein was and presently is a corporation existing under the laws of the Commonwealth of Puerto Rico, and authorized to conduct, as it conducts the business in the retail industry. As part of its retail business Blanco has several concessionary store located inside the Sears Roebuck Stores in Puerto Rico called Suite World. The Suite World concessionary is dedicated to the retail sale of men clothing.

3. Defendant, Carlos Genzana (Genzana) at all relevant times herein was the Suite World store manager, and direct supervisor of Miro who sexually harassed the plaintiff by engaging in offensive, unwelcome, severe and pervasive conduct, and created intolerable working conditions for the plaintiffs.

4. Defendant, Hector Cabrera (Cabrera) was the assistant store manager at Suite World and on several occasions supervised directly the performance of Miro at Suite World. Cabrera sexually harassed the plaintiff by engaging in offensive, unwelcome, severe and pervasive conduct, and created intolerable working conditions for the plaintiffs.

5. Defendants, INSURANCE COMPANIES "A" through "J", are insurance companies, corporations or entities, incorporated and/or organized under the laws of, and with their place of business in the Commonwealth of Puerto Rico, or incorporated and organized under the laws of, and with their principal place of business in a State, other than the Commonwealth of Puerto Rico or in a foreign country, which are authorized to conduct, as they conduct, the business of insurance, and which, at the time of the occurrence of the facts alleged in this complaint, had issued and had in full effect insurance policies, respectively, in favor of any or all of the other defendants herein, covering claims such as the ones made in this complaint.

### III
### DEFENDANTS' ACTS OF SEXUAL HARASSMENT AND RETALIATION

6. Miro was hired by Blanco on around 1988 as a sales person in the Suite World concessionary located at the Sears store in Santa Rosa Mall.

7.  Miro's duties as sales person were to attend the customers in the selection of clothing, attending the cash register and providing assistance to the store tailor. Her salary during the relevant period of time was $5.15 per hour.

8.  During the first three years of work at Suite World under the supervision Genzana and Cabrera they often made sexual demeaning jokes about the female customers. Furthermore, in the store tailor's room they kept photos of women in bikinis and lingerie all over the walls. This type of behavior was taking its toll upon Plaintiff psyche causing her to develop several physical conditions related to anxiety and stress at work.

9.  In October 2001 the sexual comments began to escalate directly towards Plaintiff, specifically after she had breast implant surgery.

10. What follows are only examples of several specific incidents of the pattern of continues sexual harassment committed by Genenza and Cabrera:

   a. Every time a women stop in front of the store to take the elevators Genzana and Cabrera made statements about the fact that he liked women with big butts and Cabrera always talked about that he liked white women.

   b. Genenza and Cabrera also had calendars with nude and semi-nude photo's which they usually talked about and

    compare the breast of the women in the calendars with Miro's breasts implants.

c. During the year 2002, Miro had to ask Cabrera for her working schedule on the following week and he told Miro that he would give her the schedule if she was willing to give him something in return, while he insinuated to Miro to perform oral sex with him.

d. Genzana and Cabrera constantly tried to kiss Miro in the lips when she greeted them.

e. Genzana slapped Miro several times in her buttocks. Each time this happened Miro looked him very serious and enraged about his conduct but he laughed at her.

f. When Miro arrived at work with her hair wet they always joked that she smelled like tiny soap ("jabon chiquito") because surely she was in a motel with her boyfriend.

g. They asked Miro's boyfriend laughing if he liked her breast implants.

h. Genzana told everyone at the store that Miro have had multiple sexual partners and sexual relations stating that Miro "habia corrido hasta de capota". At that time Miro talked directly to Genzana and asked him to stop making those kind of comments about her and to

       stop the sexual demeaning jokes at work. Genzana continued his conduct, and Cabrera followed him.

  i. On December 2002, Genzana and Cabrera gave Miro a Christmas gift of a pair of plastic women breasts wrapped in a gift paper full of stamped women breast.

  j. Cabrera also constantly talked about the fact that if Miro gave him the opportunity he would take her to a motel and have sex with her while at the same time illustrating how he would have sex with her.

  k. Genzana had a vibrator hidden in the store and made fun of Plaintiff with it accusing her that she had stolen it and used until the battery had run off.

  l. During the year 2003, while Miro was working in the store tailor room, Cabrera walked in holding his penis and told her that they were alone and ask her to perform oral sex upon him. This happened again several days later.

  m. Genzana and Cabrera also talked openly about the sexual relations they had with their partners in the open so that Miro could hear them talking.

    11.    The above referenced comments and actions were at all times unwelcome, and had the effect of creating an awkward and uncomfortable working environment for plaintiff.

12. Genzana and Cabrera's conduct has been continuous since she started working for the company and escalated after October 2001. Their behavior had the effect of interfering in an unreasonable manner with plaintiff's work, and created a hostile, intimidating and offensive working environment.

13. On several occasions during the year 2002 and 2003 Plaintiff talked to Genzana and Ms. Vanessa Pacheco, the person in charge of Human Resources at Blanco, about the incidents of sexual harassment and how she felt about them, but nothing was done to protect her.

14. Plaintiff felt no one was there to protect her because Blanco had not given her any type of training or sexual harassment policy or procedure to abide herself. Miro was at a dark with respect to her rights and protections under the law, because Blanco had purposefully kept her in the dark.

15. Furthermore, Blanco also affected the terms and conditions of Plaintiff employment reducing her working hours and giving employees with less seniority in the store better benefits and privileges in the conditions of employment. Moreover, Genzana began to tell Miro that she was no longer going to be treated with the same flexibility they have treated in the past.

16. As a result of defendants actions Plaintiff developed a major depression and anxiety attacks and had to be hospitalized in MEPSI center to receive emergency psychiatric treatment. Consequently, Plaintiff was physically and emotionally affected by the way the company handled her situation.

17. Defendants not only incurred in sexual harassment against plaintiff they even mishandled confidential information about her psychiatric treatment and condition to several other employees at Suite World.

18. On September 22, 2003, Plaintiff had no other choice but to file a charge of discrimination against Blanco, Genzana and Cabrera for continuing sexual harassment and disability discrimination. It was after Miro filed her sexual harassment charge that Blanco gave her a copy a a sexual harassment policy and procedure.

19. Notwithstanding the above, the company continued taking reprisals towards Miro submitting her to several unjust disciplinary measures that forced her to resign on November 28, 2003.

20. On August 14th, 2004 Plaintiff received the right to sue letter issued by the EEOC regarding her charge filed on September 22, 2003.

21. Defendants had direct knowledge of the pattern of sexual harassment perpetrated against Plaintiff and failed to take the appropriate steps to prevent such conduct, or try to ameliorate the situation, and failed to conduct a prompt and reasonable investigation of plaintiff sexual harassment complaint and take immediate action for said conduct to stop. Furthermore, after having knowledge of the sexual harassment behavior of Genzana and Cabrera, Defendant affected the term and conditions of Plaintiff employment with the intention to silence her charge.

IV

### First Cause of Action

### Sexual Harassment

22. The preceding paragraphs are literally incorporated herein and made part of this paragraph.

23. The conduct of all defendants herein affected the terms, conditions and privileges of Plaintiff's employment.

24. The verbal and physical harassment perpetrated upon Plaintiff by Genzana and Cabrera, as alleged above, was unwelcome, and Plaintiff advised all Defendants that this conduct was unwelcome.

25. The verbal and physical harassment perpetrated upon Plaintiff as alleged above was of a sexual nature and was

sufficiently pervasive and severe to unlawfully create an abusive and hostile work environment for the Plaintiff.

26. Genzana and Cabrera, engaged in the conduct alleged above, while acting as agents of all other defendants herein in the scope of and during the course of their duties.

27. Defendants were fully informed and had sufficient knowledge of the material facts and circumstances relevant to the conduct of Genzana and Cabrera, and failed to take meaningful measures to prevent further acts of misconduct, and acquiesced in, approved and ratified the actions of Genzana and Cabrera and are therefore liable for said misconduct. Furthermore, they are liable under the law for taking retaliatory actions against Plaintiff because on several occasions she opposed Defendants illegal conduct.

28. The conduct of Genzana and Cabrera, as alleged above, constitutes sexual harassment in violation of the Plaintiff's rights under Title VII of the Civil Rights Act of 1964 and the Civil Rights Act of 1991, and Puerto Rico's Sexual Harassment Statute, 29 L.P.R.A., §155 et seq., in that they created a hostile work environment.

29. Defendants' actions, as alleged above, caused emotional, economic and physical damages to Plaintiff that are valued in an amount not less than $2,000,000.00.

30. Plaintiff is entitled to receive as damages and just compensation, pursuant to Puerto Rico law, double the amount of the actual damages suffered by reason of having been subjected to sexual harassment. The total compensatory damages recoverable from the defendants are thus estimated to be an amount of no less that $4,000,000.00.

31. Defendants' actions, as alleged above, were intentional and demonstrated a willful, wanton and/or reckless indifference to the rights of the Plaintiff, such that punitive damages should be assessed against all defendants herein in an amount estimated to be no less than $2,000,000.00.

32. Pursuant to Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, and Puerto Rico's Sexual Harassment Statute, 29 L.P.R.A., §§ 155 et seq., Blanco, Genzana and Cabrera are strictly, vicariously and/or jointly and severally liable for all damages suffered by Plaintiff and her conjugal partnership and claimed in this complaint.

### Second Cause of Action

### Sex Discrimination

33. The preceding paragraphs are literally incorporated herein and are made part of this paragraph.

34. All defendants have unlawfully discriminated against the Plaintiff with respect to the terms, conditions and

privileges of her employment, because of her sex, in violation of 42 U.S.C. §§2000e-(a)(1) and 29 L.P.R.A. §§ 146 et seq.

35. These actions have caused emotional, physical and economic damages to Plaintiff in the amounts stated above.

### Third Cause of Action

### Intentional Infliction of Emotional Distress

36. The preceding paragraphs are literally incorporated herein and made part of this paragraph.

37. The acts of Genzana and Blanco regarding the failure to maintain the confidentiality of Plaintiff psychiatric condition was intentionally directed to inflict upon her emotional distress.

38. All defendants acted with knowledge that emotional distress to the Plaintiff was substantially certain to result and with reckless indifference to the likelihood that severe emotional distress would result from the foregoing misconduct.

39. The conduct of all defendants did in fact cause severe emotional distress and economic damages to the Plaintiff in the amounts stated above.

### Fourth Cause of Action

### Retaliatory Discharge in Violation of Puerto Rico Act. No. 115 of December 20, 1991 (Act No. 115) 29 L.P.R.A. sec. 194 et seq.

40. The preceding paragraphs are literally incorporated herein and made part of this paragraph.

41. Miro was affected in the term and conditions of her employment after she filed for SINOT benefits and after she filed her charge before the Puerto Rico Antidiscrimination Unit on September 22, 2003, forcing her to resign on November 28th, 2003 in violation of Act No. 115.

42. Puerto Rico's Act No. 115 prohibits employers from discriminating against employees because they offer or attempt to offer any testimony, expression or information before a legislative, administrative or judicial forum in Puerto Rico.

43. In Irrizary v. Johnson & Johnson, 2000 TSPR 15, the Supreme Court of Puerto Rico held that an employer retaliates against an employee under Act 115 because said employees actually gives or will attempt to offer testimony, expression or information before the SIF. Furthermore, in the cited case the Supreme Court held that an employee simple utterance that it will report to the SIF constitutes an attempt to offer testimony before the SIF, and therefore a discharge because of that statement constitutes retaliatory discharge under Act No. 115.

44. In the present case Miro actually gave testimony before SINOT and the Puerto Rico Antidiscrimination Unit.

45. Therefore, Defendants acts of retaliation are causally connected to her efforts to receive treatment under SINOT and

her efforts to protect herself from the sexual harassment conduct of Genzana and Cabrera.

46. In light of the above, Defendants are liable to Miro for all the damages, economic and mental, suffered because of the retaliation taken against her in violation of Act No. 115.

47. These actions have caused emotional, physical and economic damages to Plaintiff in the amounts of $1,000,000.00.

48. Miro is also entitled to a doubling of said damages in accordance with Act No. 115 mandates; therefore, Miro is entitled to $2,000,000.00.

### Fifth Cause of Action

### Unjust Dismissal Under Puerto Rico Act No. 80 of May 30, 1976

49. The preceding paragraphs are literally incorporated herein and made part of this paragraph.

50. Plaintiff forced resignation constitutes unjust dismissal under Puerto Rico Law No. 80 of May 30, 1976 ("Law No.80"). Therefore Plaintiff is entitled to be indemnified in accordance with Law No. 80 base on her years of employment with Blanco.

### PETITION FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

(a) That the Court declare the actions of all defendants herein to be in violation of Title VII of the Civil Rights Act of 1964 and Puerto Rico law, based upon Plaintiff's sex.

(b) That Plaintiff be awarded compensatory damages from all of the defendants jointly and severally in an amount to be determined at trial, but that is estimated not to be less than $3,000,000.00, and that said amount be doubled pursuant to Puerto Rico law for a total of $6,000,000.00.

(c) That the Plaintiff be awarded punitive damages from all the defendants jointly and severally for their malicious and/or reckless conduct in an amount to be determined at trial, but that is estimated not to be less that $2,000,000.00.

(d) That the cost of this action, including reasonable attorney's fees, be taxed against all defendants herein.

(e) That Plaintiff be awarded pre-judgment and post-judgment interests.

(f) That a jury tries all issues of fact.

(g) That plaintiff be awarded back pay and front pay.

(h) That the Plaintiff be granted any other relief she may be entitled to as a matter of law.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 12th, day of November, 2004.

CELINA ROMANY
USDC-PR 121811

JUAN M. FRONTERA SUAU
USDC-PR 214905

CELINA ROMANY LAW OFFICES
Hato Rey Tower, Suite 1604
268 Muñoz Rivera Avenue
San Juan, Puerto Rico 00918
Tels. 787.754.9304; 754.9305
Fax: 787.754.9324